BRENT J. NEWELL (State Bar No. 210312)
LAW OFFICE OF BRENT J. NEWELL
245 Kentucky Street, Suite A4
Petaluma, CA 94952
Tel: (661) 586-3724
brentjnewell@outlook.com

Attorney for Plaintiffs
Committee for a Better Arvin,
Healthy Environment for All Lives,
Medical Advocates for Healthy Air,
and Sierra Club

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMITTEE FOR A BETTER ARVIN, HEALTHY ENVIRONMENT FOR ALL LIVES, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency, and JOSH F.W. COOK, in his official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

COMPLAINT

# INTRODUCTION

1. Plaintiffs Committee for a Better Arvin, Healthy Environment for All Lives, Medical Advocates for Healthy Air, and the Sierra Club (collectively "Air Advocates") file this Clean Air Act citizen suit to compel Defendants to perform two nondiscretionary duties and protect public health in the San Joaquin Valley of California.

2. Defendants United States Environmental Protection Agency ("EPA"), Lee Zeldin, and Josh F.W. Cook have violated the Clean Air Act by failing to make a determination of attainment, or a finding of failure to attain, for the 1997 8-hour ozone National Ambient Air Quality Standard ("NAAQS" or "standard") in the San Joaquin Valley ("attainment determination").

3. Defendants EPA, Lee Zeldin, and Josh F.W. Cook have violated the Clean Air Act by failing to approve, disapprove, or partially approve/disapprove the California Smog Check Contingency Measure State Implementation Plan Revision ("Smog Check Contingency Measure") as it relates to contingency measure requirements for the 1997 8-hour ozone standard in the San Joaquin Valley and the commitment by the California Air Resources Board ("CARB") in the State Implementation Plan ("SIP") to adopt attainment contingency measures, codified at 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*).

4. Air pollution in the San Joaquin Valley is a public health crisis. The American Lung Association ranks Valley counties among the worst in the United States for ozone and fine particulate matter with an aerodynamic diameter of 2.5 microns or less ("PM2.5").

5. The Clean Air Act is a model of cooperative federalism, whereby EPA sets health-based National Ambient Air Quality Standards and the states develop the plans and strategies to attain those standards by the applicable attainment dates. States submit their plans and strategies to EPA for review and approval. EPA shall approve a submission as part of the SIP if it meets the Act's minimum requirements. EPA and citizens may enforce the EPA-approved SIP as a matter of federal law to hold states and regulated entities accountable.

6. In 1997, EPA established a NAAQS for ozone of 0.080 parts per million averaged over an 8-hour period ("1997 8-hour ozone standard").

7. EPA approved California's request to reclassify the San Joaquin Valley as an extreme ozone nonattainment area for the 1997 8-hour ozone standard. As an extreme nonattainment area, the Valley must attain the standard as expeditiously as practicable but no later than June 15, 2024.

8. EPA shall, as expeditiously as practicable but no later than December 15, 2024, determine whether the San Joaquin Valley attained or failed to attain the 1997 8-hour ozone standard. To date, EPA has failed to make an attainment determination.

9. On November 13, 2023, CARB submitted the Smog Check Contingency Measure to EPA as a revision to the SIP. On December 20, 2023, EPA found the Smog Check Contingency Measure complete.

10. EPA shall take final action on the Smog Check Contingency Measure, by full or partial approval or disapproval, by December 20, 2024. 42 U.S.C. § 7410(k)(2).

11. To date, EPA has failed to take final action on the Smog Check Contingency Measure as it relates to contingency measure requirements for the 1997 8-hour ozone standard in the San Joaquin Valley and CARB's SIP commitment to adopt attainment contingency measures for the 1997 8-hour ozone standard in the Valley.

## JURISDICTION

12. This Court has jurisdiction over this action to compel the performance nondiscretionary duties pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question jurisdiction).

13. The declaratory and injunctive relief Air Advocates request is authorized by 28 U.S.C. §§ 2801(a) and 2202, and 42 U.S.C. § 7604.

## NOTICE

14. On February 10, 2025, Air Advocates provided Defendants EPA, Zeldin, and Cook written notice of the claims stated in this action at least 60 days before commencing this action (hereafter "Notice Letter"), as required by Clean Air Act section 304(b)(2), 42 U.S.C. § 7604(b)(2) and 40 C.F.R. §§ 54.2 and 54.3. A copy of the Notice Letter, sent by certified mail, return receipt requested, is attached as Exhibit 1. Although more than 60 days have elapsed since Air Advocates provided written notice, EPA has failed to make an attainment determination for the 1997 8-hour ozone standard in the

COMPLAINT

2

San Joaquin Valley. EPA has also failed to take final action on the Smog Check Contingency Measure as it relates to contingency measures requirements for the 1997 8-hour ozone standard in the Valley and CARB's SIP commitment to adopt contingency measures for the 1997 8-hour ozone standard in the Valley. EPA has violated and continues to violate the Clean Air Act.

**VENUE**

15. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(e)(1), because the Regional Administrator for Region 9 is located in San Francisco County and because EPA's alleged violations relate to the duties of the Regional Administrator in San Francisco.

**INTRADISTRICT ASSIGNMENT**

16. Because the failure to perform a nondiscretionary duty alleged in this Complaint relates to the duties of the Regional Administrator located in San Francisco County, assignment to the San Francisco Division or the Oakland Division of this Court is proper under Civil L.R. 3-2(c) and (d).

**PARTIES**

17. Plaintiff COMMITTEE FOR A BETTER ARVIN is a nonprofit corporation organized and existing under the laws of the State of California, and based in Arvin, California. COMMITTEE FOR A BETTER ARVIN brings this action on behalf of itself and its members. The mission of COMMITTEE FOR A BETTER ARVIN is to improve the quality of life in Arvin, to inform and unite the community, to address problems facing the community, and to secure equality for all residents. COMMITTEE FOR A BETTER ARVIN and its members have engaged in advocacy for improved local and regional air quality for many years. COMMITTEE FOR A BETTER ARVIN successfully challenged EPA's unlawful approval of California's plan to attain the 1997 8-hour ozone standard in the Valley. *Committee for a Better Arvin v. EPA*, 786 F.3d 1169 (9th Cir. 2015).

18. Plaintiff HEALTHY ENVIRONMENT FOR ALL LIVES is an unincorporated association organized and existing under the laws of the State of California, and based in Avenal, California. HEALTHY ENVRIONMENT FOR ALL LIVES brings this action on behalf of itself and its members. The mission of HEALTHY ENVRIONMENT FOR ALL LIVES is to advocate for transformational social change to bring environmental, climate, educational, and economic justice to marginalized communities on the westside of the San Joaquin Valley. HEALTHY ENVRIONMENT

FOR ALL LIVES advocates for reducing air pollution as part of its environmental justice mission.

19. Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR is a nonprofit organization organized and existing under the laws of the State of California, and based in Fresno, California. MEDICAL ADVOCATES FOR HEALTHY AIR brings this action on behalf of itself and its members. MEDICAL ADVOCATES FOR HEALTHY AIR's members consist of medical professionals living in the San Joaquin Valley who regularly treat patients suffering from respiratory ailments that are caused or exacerbated by the Valley's unhealthy levels of air pollution. The mission of MEDICAL ADVOCATES FOR HEALTHY AIR is to advocate for the expeditious attainment of state and federal health-based air quality standards in the San Joaquin Valley through public education, litigation, and other means.

20. Plaintiff SIERRA CLUB is a nonprofit corporation organized and existing under the laws of the State of California, with its headquarters located in San Francisco, California. SIERRA CLUB brings this action on behalf of itself and its members. As a national organization dedicated to the protection of public health and the environment, including air quality, SIERRA CLUB has members living in all eight counties comprising the San Joaquin Valley.

21. Plaintiffs COMMITTEE FOR A BETTER ARVIN, HEALTHY ENVIRONMENT FOR ALL LIVES, MEDICAL ADVOCATES FOR HEALTHY AIR, and SIERRA CLUB are persons within the meaning of section 302(e) of the Clean Air Act, 42 U.S.C. § 7602(e), and may commence a civil action under section 304(a) of the Act, 42 U.S.C. § 7604(a).

22. Members of Plaintiffs COMMITTEE FOR A BETTER ARVIN, HEALTHY ENVIRONMENT FOR ALL LIVES, MEDICAL ADVOCATES FOR HEALTHY AIR and SIERRA CLUB live, raise their families, work, and recreate in the San Joaquin Valley. They are adversely affected by exposure to levels of ozone and PM2.5 air pollution that exceed the health-based National Ambient Air Quality Standards. The adverse effects of such pollution include actual or threatened harm to their health, their families' health, their professional, educational, and economic interests, and their aesthetic and recreational enjoyment of the environment in the San Joaquin Valley.

23. Members of Plaintiff MEDICAL ADVOCATES FOR HEALTHY AIR are medical professionals who treat patients suffering from ozone and PM2.5 related health effects, have participated

COMPLAINT
4

in substantial research on the health effects of ozone and PM2.5, and are concerned about the adverse health effects that ozone and PM2.5 have on their patients, sensitive groups, and the public.

24. Plaintiffs COMMITTEE FOR A BETTER ARVIN, HEALTHY ENVIRONMENT FOR ALL LIVES, and MEDICAL ADVOCATES FOR HEALTHY AIR secured injunctive relief to compel CARB to adopt and submit contingency measures to EPA as required by CARB's commitment in the SIP. *Central California Environmental Justice Network, et al. v. Randolph, et al.*, No. 2:22-cv-01714-DJC-CKD, 2023 WL 4678991 (E.D. Cal. July 21, 2023).

25. EPA's failure to make an attainment determination for the 1997 8-hour ozone standard as alleged in this Complaint deprives Air Advocates' members of certain procedural rights associated with EPA's required attainment determination, including notice of, and opportunity to comment on, EPA's action.

26. EPA's failure to make an attainment determination for the 1997 8-hour ozone standard as alleged in this Complaint causes Air Advocates members' injuries because EPA has failed to implement the Clean Air Act's remedial scheme. An EPA finding that the San Joaquin Valley has failed to attain the 1997 8-hour ozone standard shall trigger the implementation of attainment contingency measures, shall trigger implementation of a per ton fee applied to major stationary sources of VOC as required by 42 U.S.C. § 7511d, and shall require California to adopt a new attainment plan to attain the standard. EPA's failure to implement the remedial scheme denies members the benefits of emissions reductions from contingency measures and the new plan.

27. EPA's failure to take action on the Smog Check Contingency Measure as alleged in this Complaint deprives Air Advocates' members of certain procedural rights associated with EPA's required action on the Smog Check Contingency Measure, including notice of, and opportunity to comment on, EPA's proposed action and judicial review to challenge any EPA final action.

28. EPA's failure to take final action on the Smog Check Contingency Measure as alleged in this Complaint causes Air Advocates members' injuries because Defendants have failed to implement the Clean Air Act's remedial scheme, including ensuring the Smog Check Contingency Measure meets all Clean Air Act requirements and provides the amount of nitrogen oxides ("NOx") and volatile organic compound ("VOC") emissions reductions required by the Clean Air Act and CARB's commitment in

COMPLAINT

the SIP, codified at 40 C.F.R. § 52.220(396)(ii)(A)(2)(*i*).

29. The Clean Air Act violations alleged in this Complaint have injured and continue to injure Air Advocates' members. The injunctive relief requested in this lawsuit would redress these injuries by compelling Defendants to make an attainment determination and take action on the Smog Check Contingency Measure, both of which Congress required as integral parts of the remedial scheme for improving air quality in areas violating the NAAQS.

30. A finding of failure to attain the 1997 8-hour ozone standard would redress these injuries by triggering implementation of the Smog Check Contingency Measure, triggering implementation of a per ton fee applied to major stationary sources of VOC as required by 42 U.S.C. § 7511d, and requiring California to adopt and submit a new plan to attain the standard.

31. The injunctive relief requested in this lawsuit would redress members' injuries by compelling Defendants to take final action on the Smog Check Contingency Measure as it relates to contingency measure requirements for the 1997 8-hour ozone standard in the San Joaquin Valley and CARB's commitment in the SIP to adopt attainment contingency measures for the 1997 8-hour ozone standard, codified at 40 C.F.R. 52.220(396)(ii)(A)(2)(*i*). Such action on the Smog Check Contingency Measure would ensure the Measure complies with the Clean Air Act and provides the NOx and VOC emissions reductions required by the Act and the commitment in the SIP.

32. Injunctive relief would redress members' procedural injuries by providing notice and an opportunity to comment on the attainment determination and EPA action on the Smog Check Contingency Measure. EPA final action on the Smog Check Contingency Measure would further allow Air Advocates to secure any necessary judicial review as provided by Clean Air Act section 307(b)(1), 42 U.S.C. § 7607(b)(1).

33. The declaratory relief requested in this lawsuit would redress Air Advocates members' injuries by declaring that Defendants have a duty to make an attainment determination and take final action on the Smog Check Contingency Measure. Declaratory relief would further redress these injuries by declaring that Defendants have violated those duties.

34. Defendant UNITED STATES ENVIRONMENTAL PROTECTION AGENCY is the federal agency Congress charged with implementation and enforcement of the Clean Air Act. As

COMPLAINT

6

described below, the Act assigns to the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY certain nondiscretionary duties.

35. Defendant LEE ZELDIN is sued in his official capacity as Administrator of the United States Environmental Protection Agency. LEE ZELDIN is charged in that role with taking various actions to implement and enforce the Clean Air Act, including the actions sought in this Complaint.

36. Defendant JOSH F.W. COOK is sued in his official capacity as Regional Administrator for Region 9 of the United States Environmental Protection Agency. JOSH F.W. COOK is responsible for implementing and enforcing the Clean Air Act in Region 9, including the actions sought in this Complaint. Region 9 includes California and the San Joaquin Valley air basin.

**STATUTORY FRAMEWORK**

37. The Clean Air Act establishes a partnership between EPA and the states for the attainment and maintenance of the National Ambient Air Quality Standards. *See* 42 U.S.C. §§ 7401-7515. Under the Act, EPA has set health-based standards for six pollutants, including ozone and PM2.5. States must adopt a State Implementation Plan ("SIP") that contains enforceable emissions limitations necessary to attain the standards and meet applicable requirements of the Act. 42 U.S.C. §§ 7401(a)(1), (a)(2)(A); 7502(c)(6). States must submit all such plans and plan revisions to the EPA. 42 U.S.C. § 7410(a)(1).

38. State Implementation Plans must include enforceable emissions standards and limitations necessary to attain the NAAQS by the applicable attainment date, must demonstrate reasonable further progress, and must include contingency measures to take effect if the plan fails to meet reasonable further progress or attain the NAAQS by the applicable attainment date. 42 U.S.C. § 7502(c).

39. State Implementation Plans must demonstrate that the state's control strategy will ensure attainment of the standard by the applicable attainment deadline. *See* 42 U.S.C. § 7511a(c)(2)(A); *see also* 40 C.F.R. § 51.112(a) ("Each plan must demonstrate that the measures, rules, and regulations contained in it are adequate to provide for the timely attainment and maintenance of the national standard that it implements.").

40. A State Implementation Plan must demonstrate reasonable further progress by showing that the emission inventory for the area continues to decline according to milestones every three years.

COMPLAINT

7

42 U.S.C. § 7511a(c)(2)(B). Such demonstration must show emissions reductions of at least three percent of baseline emissions of NOx or VOC each year or less than three percent if a state demonstrates certain conditions have been met. 42 U.S.C. §§ 7511a(c)(2)(B)(i), (ii), 7511a(c)(2)(C).

41. A State Implementation Plan must include contingency measures that take effect without any further action by the state upon a plan's failure to meet Reasonable Further Progress or attain the standard by the applicable date. 42 U.S.C. § 7502(c)(9).

42. Within 60 days of EPA's receipt of a proposed State Implementation Plan or SIP revision, the Clean Air Act requires EPA to determine whether the submission is sufficient to meet the minimum criteria established by EPA. 42 U.S.C. § 7410(k)(1)(B). If EPA fails to make this "completeness" finding, the proposed SIP revision becomes complete by operation of law six months after a state submits the revision. If EPA determines that the proposed SIP revision does not meet the minimum criteria, the state is considered to have not made the submission. 42 U.S.C. 7410(k)(1)(C).

43. Within twelve months of an EPA finding that a proposed State Implementation Plan or SIP revision is complete (or deemed complete by operation of law), EPA must act to approve, disapprove, or approve in part and disapprove in part, the submission. 42 U.S.C. § 7410(k)(2).

44. If EPA disapproves the State Implementation Plan or SIP revision, in whole or in part, then the Clean Air Act requires EPA to impose sanctions against the offending state or region, including increased offsets for new and modified major stationary sources or a prohibition on the use of federal highway funds, unless the state submits revisions within 18 months. 42 U.S.C. §§ 7509(a), (b). EPA must impose both offsets and highway funding sanctions within 24 months unless the state has corrected the deficiency. Moreover, the Act requires EPA to promulgate a Federal Implementation Plan within 24 months of disapproval unless the state has corrected the deficiency, and EPA has approved the revision. 42 U.S.C. § 7410(c).

45. Once EPA approves a State Implementation Plan or SIP revision, the state and any regulated person must comply with emissions standards and limitations contained in the SIP, and all such standards and limitations become enforceable as a matter of federal law by EPA and citizens. 42 U.S.C. § 7413; 7604(a), (f).

46. Areas that EPA designates as nonattainment for a National Ambient Air Quality Standard

COMPLAINT

8

must attain the standard by the applicable attainment date. Section 179(c)(1) of the Clean Air Act, 42 U.S.C. § 7509(c)(1), requires EPA to make an attainment determination—a finding that an area either attained or failed to attain a standard—as expeditiously as practicable but no later than six months after the area's applicable attainment date.

47. The Clean Air Act requires implementation of contingency measures upon the failure of an area to make reasonable further progress, attain a NAAQS by the applicable attainment date, or fails to meet any applicable milestone. 42 U.S.C. §§ 7502(c)(9), 7511a(c)(9).

48. The Clean Air Act requires implementation of a per ton fee on each major stationary source of VOC when an extreme ozone nonattainment area fails to attain by the applicable attainment date. 42 U.S.C. § 7511d.

49. If EPA fails to perform a non-discretionary duty, including failing to make an attainment determination or failing to act on a proposed State Implementation Plan or SIP revision by the Clean Air Act deadline, then the Act allows any person to bring suit to compel EPA to perform its non-discretionary duty. 42 U.S.C. § 7604(a)(2).

## FACTUAL BACKGROUND

## Fine Particulate Matter (PM2.5) Background

50. PM2.5 is a directly emitted pollutant and forms secondarily in the atmosphere by the precursor pollutants NOx, ammonia, sulfur oxides, and VOC. Secondary PM2.5 forms primarily during the winter in the San Joaquin Valley.

51. Short-term exposure to PM2.5 pollution causes premature death, causes decreased lung function, exacerbates respiratory disease such as asthma, and causes increased hospital admissions. Long-term exposure causes development of asthma in children, causes decreased lung function growth in children, exacerbates respiratory disease such as asthma, increases the risk of death from cardiovascular disease, and increases the risk of death from heart attacks. Individuals particularly sensitive to PM2.5 exposure include older adults, people with heart and lung disease, and children.

52. According to the American Lung Association's State of the Air 2024 report, the San Joaquin Valley counties of Kern, Fresno, Kings, and Tulare rank as the first, second, fourth, and ninth most polluted counties in the United States for short-term exposure to PM2.5, respectively. For long-

term exposure, the report ranks Kern, Tulare, Fresno, Kings, and Stanislaus as the second, third, fourth, sixth, and ninth most polluted counties in the United States, respectively.

53. On July 18, 1997, the EPA established the national primary annual PM2.5 NAAQS of 15 µg/m$^3$ ("1997 annual PM2.5 standard") after considering evidence from "numerous health studies demonstrating that serious health effects" occur from exposures to PM2.5. *See* 81 Fed. Reg. 6936 (February 9, 2016); *see also* 62 Fed. Reg. 38652 (July 18, 1997); 40 C.F.R. § 50.7.

54. In 2006, to better protect the public from short-term exposures, EPA increased the stringency of the national primary annual 24-hour PM2.5 NAAQS by lowering the allowable ambient concentration from 65 µg/m$^3$ to 35 µg/m$^3$. 71 Fed. Reg. 61144, 61145 (Oct. 17, 2006) ("2006 24-hour PM2.5 standard").

55. Effective March 18, 2013, the EPA strengthened the national primary annual PM2.5 NAAQS by lowering the level from 15.0 µg/m$^3$ to 12.0 µg/m$^3$ ("2012 annual PM2.5 standard"). 78 Fed. Reg. 3086 (Jan. 13, 2013); 40 C.F.R. § 50.18.

56. The San Joaquin Valley is a serious PM2.5 nonattainment area for the 1997 annual PM2.5 standard, the 2006 24-hour standard, and the 2012 annual PM2.5 standard.

57. The San Joaquin Valley has not attained the 1997 annual PM2.5 standard. EPA data show PM2.5 design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, and 2021-2023 at 16.9 µg/m$^3$, 20.3 µg/m$^3$, 18.8 µg/m$^3$, 18.8 µg/m$^3$, and 16.2 µg/m$^3$ respectively, well above the 15 µg/m$^3$ design value necessary to attain the 1997 annual PM2.5 standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 2.

58. The San Joaquin Valley has not attained the 2012 annual PM2.5 standard. EPA data show PM2.5 design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, and 2021-2023 at 16.9 µg/m$^3$, 20.3 µg/m$^3$, 18.8 µg/m$^3$, 18.8 µg/m$^3$, and 16.2 µg/m$^3$ respectively, well above the 12 µg/m$^3$ design value necessary to attain the 2012 annual PM2.5 standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 3.

**Ozone Background**

59. Ground-level ozone is formed by a reaction between NOx and VOC in the presence of heat and sunlight. Unlike ozone in the upper atmosphere which is formed naturally and protects the

COMPLAINT
10

Earth from ultraviolet radiation, ozone at ground level is primarily formed from anthropogenic pollution.

60. Short-term exposure to ozone irritates lung tissue, decreases lung function, exacerbates respiratory disease such as asthma and Chronic Obstructive Pulmonary Disease (COPD), increases susceptibility to respiratory infections such as pneumonia, all of which contribute to an increased likelihood of emergency department visits and hospitalizations. Short-term exposure to ozone also increases the risk of premature death, especially among older adults. Long-term exposure to ozone causes asthma in children, decreases lung function, damages the airways, leads to development of COPD, and increases allergic responses.

61. According to the American Lung Association's State of the Air 2024 report, the San Joaquin Valley counties of Tulare, Kern, and Fresno rank as the fourth, fifth, and sixth most ozone-polluted counties in the United States, respectively.

62. On July 18, 1997, EPA promulgated a national primary ozone NAAQS of 0.080 parts per million averaged over an 8-hour period to replace the less stringent 1-hour ozone NAAQS ("1997 8-hour ozone standard"). 62 Fed. Reg. 38856 (July 18, 1997); 40 C.F.R. § 50.9(b) (2003).

63. On April 30, 2007, the San Joaquin Valley Unified Air Pollution Control District adopted the San Joaquin Valley 2007 Ozone Plan to attain the 1997 8-hour ozone standard.

64. On September 27, 2007, CARB adopted the State Strategy for California's 2007 State Implementation Plan ("2007 State Strategy").

65. Effective May 27, 2008, EPA completed a review of the 1997 8-hour ozone standard, found it necessary to lower the allowable ambient concentration of ozone to 0.075 parts per million, and promulgated the national primary NAAQS for ozone ("2008 8-hour ozone standard"). 73 Fed. Reg. 16436 (March. 27, 2008); 40 C.F.R. § 50.15. EPA revoked the 1997 8-hour ozone standard as part of the transition to the 2008 standard, but retained the attainment contingency measures and the major stationary source fee requirement for the 1997 8-hour ozone standard as controls to help ensure attainment of the 2008 8-hour ozone standard. 40 C.F.R. §§ 51.1100(o)(13), (15), 51.1105(a)(1).

66. Effective June 4, 2010, EPA reclassified the San Joaquin Valley to an extreme ozone nonattainment area for the 1997 8-hour ozone standard and established June 15, 2024 as the applicable attainment date. 75 Fed. Reg. 24409, 24415 (May 5, 2010).

67. On July 21, 2011, CARB adopted Resolution 11-22. Resolution 11-22 includes CARB's commitment to develop, adopt, and submit by 2020 the attainment contingency measures meeting the requirements of 172(c)(9), 42 U.S.C. § 7502(c)(9).

68. On July 21, 2011, CARB adopted the 8-Hour Ozone State Implementation Plan Revisions and Technical Revisions to the PM2.5 State Implementation Plan Transportation Conformity Budgets for the South Coast and San Joaquin Valley Air Basins ("2011 Ozone SIP Revisions"). The 2011 Ozone SIP Revision updated the baseline emissions inventory for the plan to attain the 1997 8-hour ozone standard to 565.2 tons per day of NOx and 457.5 tons per day of VOC. 76 Fed. Reg. 57846, 57858 and Table 9 (Sept. 16, 2011).

69. Effective April 30, 2012, EPA approved the San Joaquin Valley 2007 Ozone Plan, the 2007 State Strategy, the 2011 Ozone SIP Revisions, and Resolution 11-22 (collectively "2007 Ozone Plan"). 77 Fed. Reg. 12652, 12664, 12670 (Mar. 1, 2012). EPA approved CARB's commitment to develop, adopt, and submit by 2020 the attainment contingency measures meeting the requirements of section 172(c)(9), 42 U.S.C. § 7502(c)(9). 77 Fed. Reg. at 12670. EPA codified the attainment contingency measures commitment in the State Implementation Plan. *Id.*; 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*). EPA approved the attainment demonstration by the June 15, 2024 applicable attainment date. 77 Fed. Reg. at 12663 n.30, 12670.

70. Effective July 20, 2012, EPA designated the San Joaquin Valley as an extreme nonattainment area for the 2008 8-hour ozone standard. 77 Fed. Reg. 30088, 30092 (May 21, 2012); 40 C.F.R. § 51.1103(d). As an extreme nonattainment area, the Valley must attain the standard as expeditiously as practicable but no later than July 20, 2032. 40 C.F.R. § 51.1103(a); 80 Fed. Reg. 12264, 12268 (March 6, 2015).

71. On May 20, 2015, the U.S. Court of Appeals for the Ninth Circuit remanded EPA's approval of the SIP for the 1997 8-hour ozone standard and held that EPA had unlawfully approved the SIP based on emissions reductions from mobile source rules which EPA had not reviewed or approved as part of the State Implementation Plan. *Committee for a Better Arvin v. EPA*, 786 F.3d 1169, 1177 (9th Cir. 2015).

72. Effective December 28, 2015, EPA revised "the level of the [8-hour ozone] standard to

COMPLAINT
12

0.070 ppm to provide increased public health protection against health effects associated with long- and short-term exposures" and promulgated the national primary NAAQS for ozone ("2015 8-hour ozone standard"). 80 Fed. Reg. 65292, 65294 (Oct. 26, 2015); 40 C.F.R. § 50.19.

73. Effective August 3, 2018, EPA classified the San Joaquin Valley as an extreme nonattainment area for the 2015 8-hour ozone standard and established an August 3, 2038 attainment date. 83 Fed. Reg. 25776 (June 4, 2018).

74. On September 28, 2022, Plaintiffs COMMITTEE FOR A BETTER ARVIN, HEALTHY ENVIRONMENT FOR ALL LIVES, and MEDICAL ADVOCATES FOR HEALHTY AIR filed a Clean Air Act citizen suit to enforce CARB's commitment in the SIP to adopt attainment contingency measures for the 1997 8-hour ozone standard. *Central California Environmental Justice Network, et al. v. Randolph, et al.*, No. 2:22-cv-01714-DJC-CKD (E.D. Cal.).

75. On July 21, 2023, the U.S. District Court for the Eastern District of California entered an order granting summary judgment against CARB officials and the Air District. Order Granting State Defendants' Request for Judicial Notice; Granting Plaintiffs' Motion for Summary Judgment; and Withholding Submission of Plaintiffs' Motion Regarding Defendants Offer of Judgment, *Central California Environmental Justice Network v. Liane Randolph, et al.*, No. 2:22-cv-01714-DJC-CKD (E.D. Cal.) (Dkt. No. 41).

76. On October 26, 2023, CARB adopted the Smog Check Contingency Measure and Resolution 23-20.

77. On November 13, 2023, CARB submitted the Smog Check Contingency Measure as a SIP revision to EPA.

78. On December 20, 2023, EPA found the Smog Check Contingency Measure "to be administratively complete for the purposes of CAA section 110(k)(1)." 88 Fed. Reg. 87981, 87982 (Dec. 20, 2023).

79. Effective August 8, 2024, EPA approved the Smog Check Contingency Measure "as providing an individual contingency measure for the various nonattainment areas and NAAQS to which the SIP applies." 89 Fed. Reg. 56222, 56226 (July 9, 2024).

80. In the final rule approving the Smog Check Contingency Measure, EPA declined to

decide whether the Smog Check Contingency Measure complied with CARB's commitment in the SIP to adopt attainment contingency measures for the 1997 8-hour ozone standard. "In this final action, we are not determining whether the Smog Check Contingency Measure SIP fulfills CARB's commitment." 89 Fed. Reg. at 56226.

81. In the final rule approving the Smog Check Contingency Measure, EPA declined to decide whether the Smog Check Contingency Measure met applicable Clean Air Act requirements for the 1997 8-hour ozone standard. "In future actions, we will evaluate whether CARB and the relevant District have addressed the full contingency measure SIP element requirements of the CAA by considering the emissions reductions attributed to the Smog Check Contingency Measure taken together with each local air districts' additional submitted contingency measures, along with any infeasibility justifications that may also be submitted." 89 Fed. Reg. at 56227.

82. On January 17, 2025, former EPA Region 9 Regional Administrator Martha Guzman Aceves for EPA Region 9 signed a notice of public rulemaking proposing to find that the San Joaquin Valley failed to attain the 1997 8-hour ozone standard. Email from Lilly Lee, January 17, 2025, attached as Exhibit 4. Defendants have not published the proposed finding of failure to attain the Federal Register for public comment.

83. The San Joaquin Valley has not attained the 1997 8-hour ozone standard. EPA data show 8-hour ozone design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, and 2021-2023 at 0.088 parts per million ("ppm"), 0.093 ppm, 0.093 ppm, 0.094 ppm, and 0.090 ppm, respectively, well above the 0.084 ppm design value necessary to attain the 1997 8-hour ozone standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 5.

84. The San Joaquin Valley has not attained the 2008 8-hour ozone standard. EPA data show 8-hour ozone design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, and 2021-2023 at 0.088 ppm, 0.093 ppm, 0.093 ppm, 0.094 ppm, and 0.090 ppm, respectively, well above the 0.075 ppm design value necessary to attain the 2008 8-hour ozone standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 6.

85. The San Joaquin Valley has not attained the 2015 8-hour ozone standard. EPA data show

8-hour ozone design values for 2017-2019, 2018-2020, 2019-2021, 2020-2022, and 2021-2023 at 0.088 ppm, 0.093 ppm, 0.093 ppm, 0.094 ppm, and 0.090 ppm, respectively, well above the 0.070 ppm design value necessary to attain the 2015 8-hour ozone standard. The design value data are available on EPA's website at https://www.epa.gov/air-trends/air-quality-design-values#report and attached as Exhibit 7.

## FIRST CLAIM FOR RELIEF

### Failure to Perform a Non-Discretionary Duty

### to Make an Attainment Determination

### (42 U.S.C. § 7509(c)(1))

86. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-85.

87. Effective June 4, 2010, EPA reclassified the San Joaquin Valley to an extreme ozone nonattainment area for the 1997 8-hour ozone standard and established June 15, 2024 as the applicable attainment date. 75 Fed. Reg. 24409, 24415 (May 5, 2010).

88. Effective April 30, 2012, EPA approved the attainment demonstration in the San Joaquin Valley 2007 Ozone Plan as demonstrating attainment by the June 15, 2024 applicable attainment date. 77 Fed. Reg. at 12663 n.30, 12670.

89. Defendants have a mandatory duty to determine whether the San Joaquin Valley attained or failed to attain the 1997 8-hour ozone standard no later than December 15, 2024. 42 U.S.C. § 7509(c)(1).

90. Defendants have failed and continue to fail to make an attainment determination.

91. By failing to make an attainment determination, Defendants have violated and continue to violate their nondiscretionary duty to make an attainment determination pursuant to Clean Air Act section 179(c)(1), 42 U.S.C. § 7509(c)(1).

92. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). EPA's violation of the Act is ongoing and will continue unless remedied by this Court.

///

///

**SECOND CLAIM FOR RELIEF**

**Failure to Perform a Non-Discretionary Duty**

**to Act on the Smog Check Contingency Measure**

**(42 U.S.C. § 7410(k)(2))**

93. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-92.

94. On November 13, 2023, CARB submitted the Smog Check Contingency Measure as a SIP revision to EPA.

95. On December 20, 2023, EPA found the Smog Check Contingency Measure "to be administratively complete for the purposes of CAA section 110(k)(1)." 88 Fed. Reg. 87981, 87982 (Dec. 20, 2023).

96. EPA has a mandatory duty to act on the Smog Check Contingency Measure no later than December 20, 2024. 42 U.S.C. § 7410(k)(2).

97. EPA has failed and continues to fail to act on the Smog Check Contingency Measure as it applies to the 1997 8-hour ozone standard in the San Joaquin Valley.

98. EPA has failed and continues to fail to act on the Smog Check Contingency Measure to determine whether the Smog Check Contingency Measure complies with CARB's commitment in the State Implementation Plan, codified at 40 C.F.R. § 52.220(396)(ii)(A)(*2*)(*i*).

99. By failing to act on the Smog Check Contingency Measure, EPA has violated and continues to violate its nondiscretionary duty to act on the Smog Check Contingency Measure pursuant to Clean Air Act section 110(k)(2), 42 U.S.C. § 7410(k)(2).

100. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). EPA's violation of the Act is ongoing and will continue unless remedied by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the Court grant the following relief:

A. DECLARE that Defendants have a duty by December 15, 2024 to make an attainment determination of whether the San Joaquin Valley attained the 1997 8-hour ozone standard;

B. DECLARE that Defendants have violated and continue to violate the Clean Air Act by failing to make an attainment determination of whether the San Joaquin Valley attained the 1997 8-hour ozone standard;

C. DECLARE that Defendants have a duty to take final action on the Smog Check Contingency Measure by December 20, 2024.

D. DECLARE that Defendants have violated and continue to violate the Clean Air Act by failing to take final action on the Smog Check Contingency Measure;

E. ISSUE preliminary and permanent injunctions directing the Defendants to take final action on the attainment determination for the 1997 8-hour ozone standard by August 15, 2025;

F. ISSUE preliminary and permanent injunctions directing the Defendants to take final action on the Smog Check Contingency Measure by December 15, 2025;

G. RETAIN jurisdiction over this matter until such time as the Defendants have complied with their nondiscretionary duties under the Clean Air Act;

H. AWARD to Plaintiffs their costs of litigation, including reasonable attorney's and expert witness fees; and

I. GRANT such additional relief as the Court may deem just and proper.

Dated: April 14, 2025

Respectfully Submitted,

LAW OFFICE OF BRENT J. NEWELL

/s/ Brent J. Newell
Brent J. Newell
Attorney for Plaintiffs

COMPLAINT

17